The last case of the day is 4-13-0854, People v. Michael Townsell. Appearing for the appellant is Attorney Kimmel, and for the appellee is Attorney McNeil. Mr. Kimmel, are you ready to proceed? May it please the court. Counsel, my name is Darren Kimmel, and on behalf of the Office of the State Appellate Defender, I represent Michael Townsell. The Fourth Amendment was designed to protect each of us against government overreach and abuse. Here, the police seized Michael and the two other occupants of the SUV under Terry. That seizure was illegal, and the evidence resulting from that seizure should have been suppressed as proof of the poisonous tree. Yet, no motion to suppress was filed in this case. This court should hold that trial counsel was ineffective for failing to file such a motion, because it would have been meritorious and would have ended this case by suppressing all of the relevant evidence. This court should remand for an opportunity to file a motion to suppress, and have a hearing on that motion. First, this was a Terry stop, not a consensual encounter. What was stopped? All of the people, the three people that were sitting in the SUV, Your Honor. You mean the vehicle was moving at the time the police stopped it? No, Your Honor, I'm using Terry stop colloquially for a Terry seizure. Well, how about let's use it explicitly, what was stopped? The three people were seized who were sitting in the SUV. Were they stopped? Yes. How were they stopped if they're sitting there in a non-moving vehicle? Under the test from People v. Lutheran, the Illinois Supreme Court test, an objective person sitting in their position would not have felt free to terminate the encounter or refuse the police demands. Well, that's a different question as to what happens when the police went up to them. First question is, were they stopped? They weren't, were they? I mean, it's a matter of physics. See, if something is not moving, you can't stop it. That's true, Your Honor. I can change my language to use the words Terry seizure if that would... Well, so I guess the question is, first question is, what did it take, what kind of suspicion was required for the police to come up to the car and talk to the occupants? None whatsoever, Your Honor. So it's after the police came up to the car that, in your view, badness occurred? Yes, Your Honor. It's a totality of the circumstances test, so each kind of piece that we have of the factual scenario adds to the conclusion that it was a Terry seizure, if you will. Now, that begins with... Your Honor is correct that the police could have walked up and initiated a conversation. That's the explicit holding in this court, every court that's addressed this issue. That didn't happen here. Officer Carley approached the vehicle and, in his own words, ordered the occupants to put their hands up. That was his testimony. He ordered them twice to put their hands up. There were eventually three police officers and three squad cars surrounding this SUV, one parked immediately behind it, one in front, and a third one, it's not clear where. There's three officers. There's spotlights illuminating the SUV from all angles, and the officers are issuing commands. After the command to put the hands up, the officers testify that they physically opened the rear car doors. They opened the doors themselves. And then there's some back and forth on whether they tell the occupants, Chris and Michael, who are sitting in the back seat, to get out of the car. They go back and forth using the words, ask, a single time, each of them. But they also say, we had him get out of the car. We told him to get out of the car. Once Michael exits the vehicle, he's summarily frisked by Officer Llewellyn. On the totality of those circumstances, this is a Terry seizure of all three occupants because they're under ludiment. A reasonable person would not have felt free to tell the officers, no, thank you, and drive away. Well, let's assume that we agree with you. Did your client have a reasonable expectation of privacy in the vehicle? I believe he did, Your Honor, but I'm not making that argument. I'm making the argument, there's a few ways to approach this case because there's a number of sort of overlapping searches and seizures. I'm arguing that the seizure of Michael's body, his seizure was illegal. What evidence are you seeking to suppress as a result of the seizure of his body? The gun that was recovered from the search that followed that initial seizure. Well, I'm not sure that answers my question. If he had some personal property on his person when he was improperly arrested, then the argument would be what was taken from his person was the fruit of the poisonous tree. But he was put hands up and ordered out of the car. What was the fruit of that? Let's assume for the purpose of the argument, what was the fruit of that improper conduct by the police? My argument is that everything that followed, specifically Diane, the driver of the car giving consent to search, and the results of that search were through the poisonous tree. So her consent wasn't valid? It was voluntary, but that doesn't tell us anything about the Fourth Amendment attenuation analysis. What case do you say says that her consent is not valid for Fourth Amendment purposes under these circumstances? Harris, New York v. Harris, and Dunway v. New York discuss under Fourth Amendment analysis, and I discuss it at length in the briefs. Under Fourth Amendment analysis, the question is not was the consent voluntary, it's was it causally connected to the earlier illegality. Are those cases involving a situation where the fruit of the poisonous tree is obtained from the person who is complaining about the seizure and not some other party, which is what we have here? I'm sorry for interrupting you. I believe that they were the same party and not a third party. On that point, Brownlee, the Illinois Supreme Court case from 1998, is exactly on point. That's almost the exact same circumstance. The driver of the car gives consent, and the defendant, who's a passenger in the car, is the one who's complaining about that consent. That consent was downstream of an illegal tarry stop. But what was searched in Brownlee? This is not the purse case, is it? No, it was a traffic stop that was improperly elongated. I believe it was evidence on the person, but I'm not sure. I don't remember that detail. Typically, courts analyze the privacy issue, the reasonable expectation of privacy, only when analyzing a direct challenge to a search. When a seizure is an issue and a search and consent are downstream from that search, that issue is not usually brought up because the fruit of the poison is tree analysis. It's not about privacy. It's about stopping the government from doing an illegal action. It's about deterrence for the future. So the way courts had addressed the privacy issue, the reasonable expectation of privacy issue, was as an issue of standing. And courts have modified that approach to discuss it as a reasonable expectation of privacy. But that relates to whether you can challenge the initial illegality, not what has to be suppressed as a result of that illegality. Well, I think the important distinction is the fact that whether or not it was found on the person who's complaining. I'm not so sure that analysis works when we're talking about a third party giving consent and an item being found in a place where the person complaining doesn't have a reasonable expectation of privacy. I understand why you want to take us down the road along which you are trying to take us, but I'm not so sure if that's right. I would note, Your Honor, that neither of the parties have briefed the specific issue, and I would be happy to file a supplemental brief addressing this particular issue. I think it is addressed by the cases that I've cited. The Nebraska case, Ashley, deals with a similar type of situation where I'm not entirely sure where the incriminating evidence was found in that car, but it was the same situation where a driver gave consent and then a passenger had... But they find that the person had a reasonable expectation of privacy, right? That issue is never addressed because, again, it's in the fruit-of-the-poisonous-tree analysis where that's not that issue. Counsel, there's some body of case law out there dealing with the procedural posture that we have here, namely a claim that it's ineffective assistance of counsel to not have filed a motion to suppress because the evidence shows the motion would have been granted. There's a body of case law that says, wait a minute, when a motion to suppress hasn't been filed, one of the problems is we frequently don't have the record made if a motion to suppress is filed. That is, you're arguing that a motion to suppress should have been filed based upon testimony that was presented essentially by the state to establish the guilt of your client. Did Diane Brown testify in this case? She did not, Your Honor. Had the motion to suppress been filed, might her testimony have been presented? I believe it would. All three occupants of the car may have testified. And they didn't because the state wasn't told that they needed to present that testimony, and for that matter, is it possible that trial counsel might have talked to them and discovered, well, so much for this motion to suppress because this isn't going to go anywhere? It's possible there are facts that are not presented in the appellate record. Then why should we be addressing and deciding this case now? Because the Eleanor Supreme Court took this exact issue in People v. Henderson. So because in Henderson, the Supreme Court thought on the facts before it in that case, it was timely, that means henceforth it's always timely, and motions to suppress where ineffective assistance of counsel is asserted? Or to be, I'm sorry. Please. Let me be less oblique. Whereas here, there's a serious question whether the record before us is the same record that would be presented if the parties were put on notice and fully litigated it. Why don't we say that we are declining to address this matter and saying that if the defendant wishes to do so, he may file a post-conviction petition, at which time the parties can present additional evidence on this, in which time defense counsel might be given the opportunity to explain what he did, why he didn't do it, what his thinking was. I just gave you one hypothetical, which is entirely possible, that he might have talked to these other witnesses and decided that he had no basis to file a motion to suppress because it was not going to succeed. Why shouldn't we take that action? For a couple of reasons, Your Honor. First, Henderson not only took the case, they talked squarely about this exact issue. And in that case, the court noted that normally, Your Honor's scenario plays out where the appellate record is not developed well enough to address the argument on direct appeal. But in Henderson, for whatever reason, trial counsel asked essentially most of the questions that would have been asked at a suppression hearing at trial. So the factual record at trial was unusually well-developed for that issue. I would argue the same is true here because trial counsel's strategy at trial was to show that the other occupant in the backseat might have pointed the gun. And so trial counsel had wide latitude in cross-examining both police officers on exactly what happened in a blow-by-blow account of all of the facts. So Henderson talked about this issue and said, whereas there the trial record is well-developed, this issue is proper on direct appeal. And at the same time the court did that, it for the first time raised the standard for this type of argument from a probable to succeed to meritorious. So I think the slippery slope argument, I think there's little danger of that occurring because we have to clear such a high bar that on the appellate record, incomplete though it may be, this argument appears meritorious. Well, by the way, I appreciate and I commend you for your candor in talking about the difference in standard. I think that's an entirely professional thing for you to do and it's appropriate for the credibility of OSAB as an institution. So good for you. Thank you. But the issue is really one for us which we deal with a lot when there are questions as to not just do we think the record might be adequate, but would the record be more clear? Would the record, especially when you're talking about ineffective assistance of counsel, why didn't defense counsel file a motion to suppress in this case? I've given you at least a couple scenarios where I think the record might show that he talked to people and was convinced that it wasn't going to succeed. Or another scenario is we might hear from Ms. Brown and Christopher Brown, I guess his name, her son, and that would be fleshing out the record which at this point we don't really have. And the other thing is, again, the prosecutor might have asked questions differently of these officers and approached it in a different fashion if he has put on notice that there was going to be a motion to suppress. So what is the point of our guessing as opposed to simply saying, gee, Mr. Defendant, you didn't file through your agent, your lawyer, a motion to suppress. If you're complaining that your agent wasn't adequate, go ahead and file PC and we can have an entire record made at that point. I think it's a serious concern and I understand the impetus to push this to the post-conviction stage where those questions could be answered. The other helpful thing the Illinois Supreme Court has done in recent years is change the remedy that we're asking for for this type of scenario, which mirrors the post-conviction petition process. The remedy after the Marshall decision is now not asking you to reverse the conviction. It's merely to remand for an opportunity to file a motion, have a hearing on that motion, an evidentiary hearing that looks exactly like a stage three post-conviction evidentiary hearing without the first two stages, a considerable cost savings to the people of Illinois. And then depending on the outcome of that hearing, the conviction could be vacated or all of your honor's hypothetical scenarios could come to fruition and the state could put on all this testimony differently. The occupants of the car could testify to these facts that weren't presented and the motion, which looks meritorious on this fairly complete appellate record, might turn out not to be so and the conviction would stay. I'm not sure I understand. Is it your argument that if we think there's basis for the ineffective assistance of counsel claim that we don't reverse and remand for a new trial? Instead we reverse or I'm not sure what we do. We remand for a hearing on the motion that wasn't filed but I guess should be filed to suppress where then all this evidence would be presented? I was surprised by this as well, your honor. When I started this case I assumed the remedy would be reversal and a new trial. The first district did that in Marshall in 2010. They actually reversed outright because it seemed so apparent that the motion suppressed that wasn't filed should have been and would have succeeded. The Illinois Supreme Court and supervisory order vacated that decision and directed them to remand for the remedy that we're asking for here. Well, supervisory orders are non-precedential and maybe that very case is a good reason why. What case that might be deemed precedential do we have where we are vacating or I guess just remanding? I guess we're not vacating. The trial court could still say, yeah, there was no problem here and I'm going to reinstitute or what? Reaffirm the conviction. Reaffirm my conviction? I'm not sure I'm the trial judge when I say but apparently you're asking us to just send this back for a hearing on a motion to suppress? I'm asking for the same remedy the Illinois Supreme Court imposed in Marshall. I know that decision is not precedential but I believe this court looked to that remedy. What would it be? You're asking us to send it back for a hearing on a motion to suppress? That's what I've asked for in the briefs is that. Okay. And to be clear, we're supposed to tell, I guess, new counsel to file a motion or is it still optional in whoever would become counsel on remand? I believe the language I've asked for is an opportunity to file a motion. So that opportunity could be declined by whatever counsel the trial court appoints on remand, whether it's the same trial counsel I would assume. Well, but even though we have the same record that you've now presented to us and your argument is on this record there would be ineffective assistance of counsel. So I would assume there would be a different attorney who would be appointed. But any attorney would be ineffective assistance not to file a motion. I think on this record it is and it is meritorious. So we'd have to issue an order on remand, you must file a motion to suppress and then conduct a hearing. I believe that an attorney presented with this record would file a motion to suppress. If a person did not do so, then we would need to. But it would have to because our conclusion would be it would be ineffective assistance of counsel not to on this record. Right. Well, would there be an opportunity for counsel to represent to the court that after further investigation I have chosen not to file one and here's why? I think counsel could create that record and that would alleviate your Honor's concern. We'd be the first appellate court to do this of our own volition? Of your own volition, yes. That's the second overall. For all these reasons we would ask that this court would remand for an opportunity to file a motion to suppress. Thank you. Thank you. Mr. McNeil. Please support counsel. It's hard not to slip into the analysis of a denial of a motion to suppress in this case because we do have to remember it is ineffective assistance of counsel. For that matter, we have to look at the record. We have the record that we have. As Justice Steigman already put out, many of my bullet points, questions would be asked differently in a motion to suppress hearing. Different witnesses would be called, and we can't assume that the evidence that's absent from this record would benefit defendants. The other thing I forgot to mention is we're also missing findings of fact by the trial court. We don't have the trial court saying who it believes and what it believes about what happened leading up to the seizure of the property. It clearly would be better as a collateral attack. That being said, we do need to analyze it with the record that we do have from an ineffective assistance of counsel perspective. Why do we need to do that? Just to show that if any motion with this record, the argument is ineffective assistance. Or you could have said, don't do it. Affirm and send it back and let them file a PC. I mean, that would be great. But it's due diligence to at least examine the record that we have. Well, obviously, because you never know what the appellate court is going to do. So it's always smart to address the issue. The emphasis to take here is that any absence of facts of what would be usually or normally questioned at a motion to suppress hearing that aren't in this record can't be automatically assumed to benefit defendant here. He points to People v. Henderson. In his defendant's reply brief, he states that somehow the state concedes that the record's sufficient. The defendant's wrong on that point. Henderson, the state didn't argue the record was insufficient for this purpose until the Supreme Court level. They didn't argue that at all in the appellate court level. Of course, we're at the first level here now. So the state is not changing positions midstream like in Henderson. Also, Henderson was unique in the fact that that defense counsel was given tremendous leeway in asking questions that would be similar to what was asked in a motion to suppress hearing. Here, that just wasn't the case. You've never conceded the sufficiency of the trial record for purposes of the stop issue? It's hard to not go into a legal motion to suppress denial. I went through the facts of the trial record. I understand you've attempted to address it based upon what you have in front of you, but it's a different question. Did you ever concede in this record somehow in your brief where you say, by the way, this is plenty good right now. We don't need any further remand for hearing. You can go ahead and decide this issue right now. Of course. I did not say that. Okay. Well, the reason Henderson points this out, and I don't know to what extent this was an important factor, as Mr. Kimmel quotes appropriately in the reply brief, moreover, the state has already conceded the sufficiency of the trial record. You haven't. Because they didn't argue this whatsoever at the appellate level. This was a Supreme Court case. Right. I note at least once. And the Supreme Court began, again, as Mr. Kimmel points out, by pointing out that whereas here the defense claim of ineffective systems counsel based on counsel's failure to follow suppression motion, the record will frequently be incomplete or inadequate to evaluate that claim because the record was not created for that purpose. As I do point out in my brief. And then they just said, but seemingly under the peculiar facts of this case, number one, and number two, the state having conceded the matter, we're going to decide on the merits. Correct. Both of those points aren't existing in this case. Okay. The questions asked by counsel here and frequently relied upon in defendants' briefs are the so-called vagueness of the report, gunshot report, or whether they told or asked defendants to step out of the car. These weren't issues. The legality of the search wasn't an issue. At trial they had no reason to go into the reliability of the gunshot report. They had no reason to talk about the tone or demand of defendants getting out of the car. So, of course, those issues aren't going to be as fleshed out as they were in a motion to suppress. Still, from an ineffective assistance standpoint, just because those facts are absent doesn't automatically mean that they would benefit defendant in a motion to suppress. Defense counsels presumed to know how to do their job. As Justice Steigman pointed out, maybe he interviewed these potential witnesses. Maybe he talked to the defendant himself and said he consented to the pat-down. There's just no way to set the precedent that any absent facts automatically benefit defendant. It would be hard to overcome that on any appeal where some defense counsel fails to file a motion to suppress. Almost anything could be an effective assistance to counsel at that point. The defendant did not testify in this case, did he? No. Okay. People v. Brownlee, I wanted to discuss that. That was brought up on argument. That case is distinguishable. There was a motion to suppress hearing in that case, first of all, and there was not here. So, again, they had a more fleshed-out record to go with that. That's the fruit-of-the-poisonous-tree case that the defendant mentioned earlier. As for that, the causal connection between Diane Brown's consent and the pat-down, it's easy to show that the causal connection is strained at best. There's nothing in the record to suggest that even if the defendant and the other passenger weren't taken out of the car, there's nothing to suggest that Diane Brown wasn't going to consent to a search anyway. We can't assume, again, we can't assume that she would just because those facts aren't in the record. There's no evidence of any demanding tones. There's no evidence of elevated language. It seemed like a cordial conversation between Diane Brown and another police officer. At the time, she was more than happy to allow them to search, at least from the cold record, it seemed like she was more than happy to allow them to search the vehicle. She said, of course, there's no guns in here. It would be hard to establish a fruit-of-the-poisonous-tree, even if a motion to suppress was granted for the illegal search. Even assuming it's illegal, it's hard to establish a causal connection between Diane Brown's consent here and the very minimally intrusive, which it was an over-the-close, pat-down search of defendant outside of the car. As for the legality of the search itself, again, we have to remember this. It's hard not to go into motion to suppress analysis here. But, of course, the touchstone of the Fourth Amendment is reasonableness. Here, the facts are this officer was dispatched to here for gunshots reported just minutes before this in the alley next to the street. He sees three people. The record's unclear on if he sees anybody else. So, apparently, these are the only three out. It was 115 in the morning, so that makes sense. Goes through the alley, doesn't see anyone there, comes back, and these people that were standing on this curb by this SUV are now inside the SUV. He approaches the vehicle. As People vs. Woods says, Justice Steigman's opinion, of course the police is allowed to approach a person seated in a parked vehicle and ask questions without it being a seizure. So, at that point, this is clearly a consensual encounter. On the way, he sees the defendant lean forward, lean forward further. In his opinion, as a police officer under those circumstances, he felt the defendant might have been concealing a gun at that point. That's a reasonable suspicion to have. Based on that, doing the balancing test of the Fourth Amendment, which is legitimate government purposes versus the intrusion, here we have a minimal intrusion of an over-the-close pat-down search versus the possibility of bullets flying through this neighborhood, bullets hurting the police officer that's there, who obviously, for due diligence, needs to further investigate the only people he's seen near a gunshot report, and even the other people in the car. So the legitimate purpose of any kind of minimal intrusion clearly outweighs it if we're doing the Fourth Amendment balancing test here. So, what does that matter for this case? Only that it shows the likelihood that a motion to suppress would have been denied anyway, based on the record we have here. Of course, a post-conviction petition with affidavits from Diane Brown or the defendant himself or the attorney or something like that might flesh out this matter further, but we have the record that we have, and based on that, there just can't be an ineffective assistance of counsel claim. What about the reasonable expectation of privacy argument? Being that the gun was not found on the defendant's person, it was found in the car anyway. Do we have to go into all this analysis about the causal connection? Can we avoid all that, given that he didn't have a reasonable expectation of privacy? How could the motion have been successful? I think, correct, the defendant sort of took the attack of the illegal seizure of the defendant sort of compelled her to give consent, and that's how it's fruited a poisonous tree. So that's the way I replied in my brief. Of course, with the defendant out of the car, it would be hard how he would have a reasonable expectation of privacy of a gun underneath the seat in the car anyway. He was not the driver, and apparently his theory was that it was not his anyway, or something like that. Yes, there seems to be not very much expectation of privacy to that gun in that situation. All right, thank the court. Thank you, Mr. McNeil. Mr. Kemmel, rebuttal. May it please the court? I'd like to talk about the issue of the state's concession regarding Henderson and talk about your honor's question on the reasonable expectation of privacy issue. The part of the state's brief that I was quoting in the reply brief, noting that the state had essentially already conceded the issue, which is on page 6, where the state argued that based even on the minimal testimony on the subject of reasonable suspicion at trial in this case, any motion to suppress would have likely been denied. The point was simply that they were saying it's good enough for us to win. Isn't that just careful appellate practice, knowing what a loose cannon the appellate court is after all? They don't want to just let us address this without their having, almost like alternative pleadings, you know, say, by the way, you shouldn't be hearing this, but if you're going to hear it, then this is how we think it should be resolved. Why would that constitute a concession by them of the same sort that the Supreme Court mentioned in Henderson? Henderson didn't talk about, the state discussed it as the state changing its mind from the appellate to the Supreme Court level. That's not, in my recollection, that's not how Henderson discussed it. Henderson discussed it as, one, the state relies on the same record to argue that it wouldn't be a meritorious motion to suppress. And that's exactly what happened. Well, I don't know, and I can't recall what happened at the appellate court level in Henderson or what the history was, but to your credit, and you quote it, and I appreciate that, counsel. That's, again, an appropriate thing to do professionally. The Supreme Court made a point of noting the concession by the state that, hey, this record is just fine now. I don't know when and how that occurred. Perhaps it was even during oral argument. But the Supreme Court was satisfied that the state had conceded it, and to the extent there was any ambiguity, Mr. McNeil seems to have cleared it up. Essentially, I think the technical term was, I ain't conceding nothing no how. That's fair, Your Honor. I would just point out, in a re-reading of Henderson, the Supreme Court explained why it believed the state had conceded. This is a fairly minor point. I don't want to belabor it. But the Supreme Court said, by relying on the record, they had conceded this point. That was the extent of it. So the court did also point out, and, again, you quoted it to your credit, that the norm is that we shouldn't be entertaining these things because the record would not be complete. That's true. And the argument is that this, like Henderson, is a rarity. It won't occur very often. But turning to Your Honor's point on the reasonable expectation of privacy, starting with Wong's song that the Supreme Court says that essentially began the Fruit of the Poisonous Tree analysis, it's been recognized that, through the Poisonous Tree analysis, the exclusionary prohibition extends as well to the indirect as the direct products of such invasions. The exclusionary rule is about deterrence to bad government actions. So what is capped out at that point? I have never seen a case that, on any level of any court, that analyzes the exclusionary rule principles based on reasonable expectations of privacy because the information that is given following an illegal seizure may lead to all sorts of fruits, which the government then can put into play in the cases, as in Wong's son, where the initial confession led immediately to physical evidence at another location. And I don't believe Wong's son was the owner of that location. I think it was a drug dealer that he knew. So that very first case is an example of the opposite of that point. I don't believe Wong's son had a reasonable expectation of privacy in that place. The issue of standing or privacy only relates to the initial search or seizure that is challenged. Once we get into the exclusionary rule issue, it's what downstream of that illegality has to be kept out as deterrence to the state's bad action. And if we adopted a privacy-based approach to that downstream exclusion, we'd have very weird results where things could come in. Even though the state had acted badly, things could come into evidence because the defendant has privacy here but not over there and here but not there. So the privacy issue, the standing issue, only relates to the initial search or seizure that is challenged. And that is the reason we challenged the seizure of Michael's person and the search we treated that as a downstream fruit of that initial poisoning. And I believe all of the case law follows that logic. I will file a supplemental brief on this issue, but I do not recall any cases that analyze it from that perspective. Thank you. All right. Thank you, counsel. The case will be taken under advisement and a written disposition shall issue. Court stands in recess.